UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ANTONIO G. CALABRESE  :
                     :
    v.               :  C.A. No. 14-463ML
                     :
ARGUS GROUP HOLDINGS :
LIMITED and BERMUDA LIFE :
INSURANCE COMPANY    :
LIMITED              :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 7) filed by Defendants Argus Group Holdings, Ltd. ("Argus") and Bermuda Life Ins. Co., Ltd ("Bermuda Life"). Defendants seek dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) on the grounds that this Court lacks personal jurisdiction over them and that the Complaint fails to state any viable legal claims. Plaintiff filed a timely Objection to Defendants' Motion. (Document No. 10).

This Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. After reviewing the pleadings and arguments of the parties, in addition to performing independent research, I recommend that Defendants' Motion to Dismiss for lack of personal jurisdiction (Document No. 7) be GRANTED.

**Facts**

The case arises out of the 2008 purchase by Plaintiff of two variable annuity policies that were invested in funds managed by Bernard Madoff and are virtually worthless today. Plaintiff brings several claims seeking to recoup his losses from the Seller of the policies, Bermuda Life and

its parent Argus. Defendants dispute both that this Court may constitutionally exercise personal jurisdiction over them and, alternatively, that Plaintiff's Complaint fails to state any legally viable claims against them.

Both Defendants are organized under Bermuda law and maintain a principal place of business in Bermuda. Plaintiff is a Rhode Island resident. In the Spring of 2008, Plaintiff held two variable annuity policies with Anglo-Dutch Insurance Company, Ltd. (Document No. 11 at ¶ 11). After learning that Anglo-Dutch was getting out of the business, Plaintiff wished to purchase new policies and engaged Rhode Island tax counsel to ensure that the withdrawal from Anglo-Dutch and the purchase with Bermuda Life could be done "without having to pay taxes on the transfer." Id. Plaintiff's Rhode Island tax attorney had a number of communications during 2008 with Philip Trussell, a representative of Argus, about the transfer. Plaintiff asserts that his attorney "contacted Trussell to do what was necessary to get me into annuity policies underwritten by Bermuda Life." Id. at ¶ 13.

Although Plaintiff avers that these phone and email communications included "negotiations," he offers absolutely no evidence as to the terms negotiated or the results of those negotiations and thus it is a completely unsubstantiated averment. In response, Mr. Trussell denies that he and Plaintiff's attorney negotiated any terms of the annuity policies and asserts that the policies were standard, non-negotiable policies. (Document No. 15-3 at ¶ 9). Mr. Trussell also asserts that the primary focus of his communications with Plaintiff's attorney was on the logistics of the transfer, including exchanging documents for signature. Id. Such evidence is uncontroverted by Plaintiff.

It is also undisputed that Plaintiff signed, and his attorney witnessed, several documents in Rhode Island related to the transfer. These included an Exchange Request Form from Bermuda Life

to Anglo-Dutch, an Election of Investments Form, a Deferred Variable Annuity Acknowledgment of Receipt and a Deferred Variable Annuity Application Form.

**Standard of Review**

It is well established that the burden rests with the plaintiff to make a prima facie showing to withstand a challenge to personal jurisdiction. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)). See also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In assessing the plaintiff's prima facie case, the Court must accept the plaintiff's specific facts as true and construe them "in the light most congenial to the plaintiff's jurisdictional claim." See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). See also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994) (holding that the court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff.") In setting forth the prima facie case, the plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts." Barrett, 239 F.3d at 26 (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)). Here, Plaintiff relies on his sworn Declaration and several documents related to the Variable Annuities in issue. (Document Nos. 11 and 12).

Because Defendants are not present in Rhode Island, they are subject to personal jurisdiction in this Court only if they have certain minimum contacts with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Whether sufficient minimum contacts

exist depends on the quality and nature of Defendants' activity, but it is essential that there be some act by which Defendants purposefully availed themselves of the privilege of conducting business with the forum state, thus invoking its benefits and protections. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). This "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). In applying the minimum contacts analysis, the courts recognize two types of jurisdiction – specific and general.

### A. Specific Jurisdiction

The initial inquiry is whether the Court has general or specific jurisdiction. Plaintiff exclusively contends that there is specific jurisdiction over Defendants. Thus, the Court need not consider if general jurisdiction exists as to Defendants. The Supreme Court has held that where plaintiff's claim "arises out of" or is "directly related" to defendant's contacts with the forum state, a court exercises "specific jurisdiction" over the defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984). In the analysis of specific jurisdiction, the court applies two general rules. First, the forum in which the federal district court sits must have a long-arm statute that grants jurisdiction over the defendant. See Barrett, 239 F.3d at 26. Second, "the plaintiff must...show sufficient minimum contacts such that 'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (D. Mass. 2002) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes a court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990); see also

Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161 (D.R.I. 2001). Accordingly, the Court need only decide whether the assertion of personal jurisdiction over Defendants comports with due process principles.

**B.     Due Process Considerations**

Where specific jurisdiction is asserted, the First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). In order for a court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied.

**1.     Relatedness**

The first prong of the due process test is a consideration of relatedness. To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec., 960 F.2d at 1089. Relatedness is intended to be a "flexible, relaxed standard." Sawtelle, 70 F.3d at 1389 (citing Pritzker, 42 F.3d at 61). In a contract case, relatedness is established if the defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999) (emphasis added).

## 2. Purposeful Availment

The second prong of the due process test considers whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability. See Ticketmaster, 26 F.3d at 207. "To demonstrate purposeful availment, the plaintiff must proffer 'evidence that the defendant[s] actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation, – the mere fact that the defendant[s] willingly entered into a tendered relationship does not carry the day.'" PFIP, LLC v. Planet Fitness Enter., Inc., No. 04-250-JD, 2004 WL 2538489, at *7 (D.N.H. Nov. 10, 2004) (quoting Phillips Exeter, 196 F.3d at 292). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." Id. (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

The issue of foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts', or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475. There must be evidence of "a voluntary decision by the defendant to inject [itself] into the local economy as a market participant." Microfibres, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 321 (D.R.I. 1998).

## 3. Gestalt Factors

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendant is reasonable. United Elec., 960 F.2d at 1089. In making this

determination, the Court considers the so-called "Gestalt" factors. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

   C.   **Analysis**

The jurisdictional analysis in this case begins and ends with the purposeful availment prong of the test. Here, Plaintiff does not allege any acts by Argus or Bermuda Life purposefully or intentionally directed towards Rhode Island through which they availed themselves of the protections of Rhode Island law and could reasonably foresee that they might be required to defend themselves in a Rhode Island court.

The sole basis for Plaintiff's purposeful availment argument is that "defendants most assuredly sold two Annuity Policies to [him], where the Annuity Applications plainly identified him as a resident of Rhode Island" and that "[n]o one forced them to do so." (Document No. 10-1 at p. 26). While these facts are true, they are simply not enough to establish purposeful availment. "A contract with an out-of-state party, alone, is insufficient to confer specific jurisdiction." Independence Bank v. Balbo Constr. Corp., C.A. No. 14-020S, 2014 WL 3374756 at *2 (D.R.I. July 9, 2014). There is no evidence that Defendants reached out to Rhode Island to solicit a business relationship with Plaintiff or that any negotiations took place in Rhode Island. In fact, in his sworn Declaration, Plaintiff acknowledges that he "wanted to purchase" new policies after learning that Anglo-Dutch was "getting out of the business" and thereafter applied for policies with Bermuda Life. (Document No. 11 at ¶ 11). He also acknowledges that his tax attorney contacted Defendants' representative Trussell "to do what was necessary to get [him] into annuity policies underwritten by Bermuda Life." Id. at ¶ 13. Plaintiff also does not controvert Defendants' assertions in the Jones and Trussell Declarations that Defendants did not solicit business from Plaintiff in Rhode Island and

that it was Plaintiff who initiated the policy exchanges. (Document Nos. 7-2 and 15-3). See also PFIP, LLC v. Planet Fitness supra (purposeful availment requires evidence that a defendant "actually reached out to the plaintiff's state of residence to create a relationship – say, by solicitation"). "A company does not subject itself to jurisdiction in a forum simply by following up with forum residents who, without prior solicitation, have expressed an interest in purchasing the company's product." Carreras v. PMG Collins, LLC, 660 F.3d 549, 556 (1st Cir. 2011). In addition, the ministerial communications between Plaintiff's tax attorney and Defendants and execution of documents in Rhode Island by Plaintiff to effectuate the policy exchanges are also not enough to constitute purposeful availment. Id. (A party who "merely mails a contract into a forum for signature...cannot reasonably foresee being sued there"); see also Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007) (holding that the "exchange of communications in the course of developing and carrying out a contract" does not qualify as purposeful availment).

Because Defendants' contacts with Rhode Island are plainly insufficient to satisfy the purposeful availment prong of the jurisdictional inquiry, there is no need to address the remaining factors since an "affirmative finding on each...is required to support a finding of specific jurisdiction." Phillips Exeter, 196 F.3d at 288. Likewise, there is no need to separately address Defendants' alternative argument that dismissal on the merits is required pursuant to Rule 12(b)(6).

**Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P., (Document No. 7) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 20, 2015