UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANTONIO G. CALABRESE

     v.                         C.A. No. 14-463-ML

ARGUS GROUP HOLDINGS
LIMITED and BERMUDA LIFE
INSURANCE COMPANY
LIMITED

**MEMORANDUM AND ORDER**

The Plaintiff in this case, Antonio G. Calabrese ("Calabrese"), seeks to recover for the loss of his considerable investment in two variable annuity policies (the "Policies") he purchased from Bermuda Life Insurance Company Limited ("Bermuda Life"), a wholly owned subsidiary of Argus Group Holdings Limited ("Argus", together with Bermuda Life, the "Defendants"). The Policies lost all value after their investments were managed by Bernard Madoff.

On May 21, 2015, Magistrate Judge Lincoln Almond issued a Report and Recommendation ("R&R", Dkt. No. 18), in which he recommended that the Defendants' motion to dismiss Calabrese's four-count complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)(Dkt. No. 7) be granted on the ground that this Court lacks personal jurisdiction over the Defendants, which are both organized under the law of Bermunda and maintain a principal place of business there.

On June 4, 2015, Calabrese filed an objection[1] to the R&R, asserting that the facts in this case allow a finding of purposeful availment of this forum by the Defendants, such that the Court's exercise of personal jurisdiction over the Defendants would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Defendants filed a memorandum in opposition to Calabrese's objection on June 19, 2015 (Dkt. No. 20). For the reasons discussed below, the Court adopts the recommendation set forth in the May 21, 2015 R&R that the Defendants' motion to dismiss Calabrese's complaint be granted.

## I. Factual Background[2]

Calabrese is a Rhode Island resident; the Defendants are organized in Bermuda, where their primary places of business are located. Complaint ¶¶ 1, 2, 3. According to Calabrese's declaration (Dkt. No. 11) in support of his opposition to the Defendants'

---

[1] Calabrese has requested oral argument on his objection to the R&R. In light of the clearly established law on the jurisdictional question and the undisputed facts in this case, the Court will proceed to decide the motion on the submitted pleadings and supporting documentation. Bank One, Texas, N.A. v. Montle, 964 F.2d 49, 51 (1st Cir.1992)("District courts have wide discretion to determine which procedures to employ in resolving the jurisdictional issue.").

[2] The summary of facts is based on allegations in Calabrese's complaint, the assertions set forth in his declaration (Dkt. No. 11), and the Defendants' respective responses, to the extent that Calabrese has not controverted those responses with some specificity or evidentiary support.

motion to dismiss, Calabrese had first invested in two variable annuity policies with Anglo-Dutch Insurance Company, Ltd.("Anglo-Dutch"). Pltf's Declaration at ¶ 11. Calabrese acknowledges that those investments included "high-risk investment funds" and that, while his money was invested with Anglo-Dutch, it had been in a Rye Select LDC[3] fund for 15 years. Id. ¶¶ 6, 12.  In 2008, when Anglo-Dutch informed Calabrese that it would discontinue its underwriting business, Calabrese sought to purchase new deferred variable annuity policies from another source. Id. at ¶ 11.  To avoid certain tax consequences, Calabrese hired a Rhode Island-based attorney to assist him in the transfer of the money he had in the Anglo-Dutch annuity Policies to the Bermuda Life Annuity Policies. Id. The attorney who helped Calabrese procure the deferred annual variable annuity Policies from Bermuda Life has since died.

According to Calabrese, he filled out an application to obtain the Bermuda Life policies and selected the "Rye Select Broad Market Insurance Portfolio." Calabrese alleges in his complaint and declaration that, because this fund did not include "LDC" in its name, he believed it to be low-risk.  Calabrese's attorney contacted Philip Trussell ("Trussell") from Argus to "do what was

---

[3] In his declaration, Calabrese intermittently uses "LCD" instead of "LDC" to describe the funds in which he invested. Although neither party provides an explanation of what the abbreviation stands for, there is general agreement that the designation "LDC" indicates that "the fund engaged in high-risk transactions."  Pltf's Declaration at ¶ 7.

3

necessary to get [Calabrese] into annuity polices underwritten by Bermuda Life." Pltf's Declaration at ¶ 13.

Calabrese asserts that his attorney and Trussell "frequently communicated by telephone and e-mail to negotiate and complete the procurement of annuity policies for deferred variable annuity policies underwritten by Bermuda Life." Id. at ¶ 14. Trussell sent certain documents to Calabrese's attorney, who returned them to Trussell after Calabrese signed them. Id. at ¶¶ 15, 17. After the Bermuda Life Policies[4] had been issued, Calabrese's attorney received two performance statements from Argus. Id. at ¶ 18. Subsequently, the Policies lost all value because they were invested in funds managed by Bernard Madoff.

## II. Procedural History

On September 15, 2014, Calabrese filed a complaint (the "Complaint") against Bermuda Life and Argus in Rhode Island State Court; the Defendants removed the case to this Court on October 21, 2014. The gravamen of Calabrese's Complaint is that, when he selected the "Rye Select Broad Market Insurance Portfolio" from a list of possible investments, his money was invested by the Defendants in the "Rye Select Broad Market Insurance Portfolio LDC," bearing the LDC designation, which Calabrese knew signified

---

[4] The Policies noted that they were "[n]ot for sale in the United States of America," and they contained a clause stating that they were to be construed according to Bermuda law.

a high-risk investment. Although Calabrese acknowledged that his Anglo-Dutch policies had been invested in LDC funds for the prior fifteen years, he now asserts that he had the intention to switch his investment strategy from high-risk to low-risk funds.

On November 26, 2014, the Defendants sought dismissal of Calabrese's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 7). Calabrese objected to the Defendants' motion (Dkt. No. 10), to which the Defendants filed a reply (Dkt. No. 15). Both parties included various declarations and other submissions in support of their respective positions. By agreement of the parties, Magistrate Judge Almond[5] forwent oral argument on the Defendants' motion to dismiss and issued an R&R on May 21, 2015 (Dkt. No. 18). Calabrese filed a timely objection to the R&R (Dkt. No. 19), to which the Defendants filed a response (Dkt. No. 20).

**III. The R&R and the Parties' Positions**

Based on the substantiated facts asserted by Calabrese in his pleadings and declaration, Magistrate Judge Almond concluded that the Defendants' contacts with Rhode Island were "insufficient to satisfy the purposeful availment prong of the jurisdictional

---

[5] The case was referred to Magistrate Judge Almond on May 11, 2015, following recusal by the Magistrate Judge originally assigned to this case.

inquiry." R&R at 8. Calabrese objects to the R&R, asserting, *inter alia*, that (1) Calabrese set forth sufficient facts to support a finding that the Defendants are subject to this Court's personal jurisdiction; and (2) the Magistrate Judge failed to construe the facts asserted by Calabrese in the light most favorable to the plaintiff. As an alternative measure, Calabrese requests, for the first time, permission to conduct limited discovery into jurisdictional facts. The Defendants, on their part, maintain that they had no meaningful contact with Rhode Island. The Defendants also point out that Calabrese's newly asserted request for jurisdictional discovery is unsupported by any facts to demonstrate why jurisdiction would be found if such discovery were to be permitted.

**IV. Standard of Review**

The burden of establishing this Court's personal jurisdiction over the Defendants rests on Calabrese. Hannon v. Beard, 524 F.3d 275, 279 (1st Cir.2008)(noting that "'[t]he plaintiff bears the burden of proving the court's personal jurisdiction over a defendant.'")(quoting Daynard v. Ness, Motley, Loadhold, Richardson, & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)). Under the *prima facie* standard applicable in this case, the Court "accept[s] the plaintiff's (properly documented) evidentiary proffers as true," and construes those facts "in the light most congenial to the plaintiff's jurisdictional claim." Hannon v.

6

Beard, 524 F.3d at 280. The Court accepts a plaintiff's "'(properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the *prima facie* showing.'" Women & Infants Hosp. of R.I., 394 F.Supp.2d 488, 490 (quoting Foster–Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir.1995)). To the extent the Defendants' version of the events is uncontradicted, the Court "then add[s] to the mix facts put forward by the defendant." Women & Infants Hosp. of R.I., 394 F.Supp.2d at 490 (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.1998) However, the plaintiff "ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Phillips v. Prairie Eye Center, 530 F.3d 22, 26 (1st Cir. 2008)(quoting Foster–Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 145).

In response to the Defendants' motion to dismiss the Complaint, Calabrese asserts only "specific jurisdiction" as a basis for this Court's personal jurisdiction over the Defendants. Rhode Island has a long-arm statute, R.I. Gen. Laws § 9-5-33, which grants specific jurisdiction over a non-resident defendant to the limits permitted by the United States Constitution. Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir.1990). The due process clause requires that, "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that

7

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. at 319, 66 S.Ct. 154, 90 L.Ed. 95 (citation omitted).

To establish that an out-of-state defendant has or had sufficient minimum contacts with the forum state to warrant a grant of specific jurisdiction over the defendant, a plaintiff must make a showing in each of three separate categories: relatedness, purposeful availment, and reasonableness. Phillips v. Prairie Eye Center, 530 F.3d at 27. To meet that burden, the plaintiff must establish that (1) the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities; (2) the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) the exercise of jurisdiction is reasonable in light of the Gestalt factors. Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007)(citation omitted).

It is well established law that "the plaintiff must demonstrate that each of these three requirements is satisfied, Phillips v. Prairie Eye Center, 530 F.3d at 27 (emphasis added), and that "the Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." United Elec., Radio and Mach. Workers of America v. 163

Pleasant Street Corp., 960 F.2d 1080, 1091 n. 11 (1st Cir. 1992). Accordingly, a determination that the Defendants' conduct in this case does not rise to the level of "purposeful availment" is dispositive for the jurisdictional analysis.

**V. Discussion**

In the Complaint, Calabrese generally alleges that the Defendants transacted business in Rhode Island, Complaint at ¶ 7. However, in support of that contention, he only further asserts that the Defendants provided him with documents for the selection of his investment, Complaint ¶ 11, and two related performance statements, id. at ¶ 20. At the same time, Calabrese acknowledges that he made the selection for his out-of-state investments in Rhode Island, where he also executed the documents. Id. at ¶ 14. There are no allegations that the Defendants ever reached out to solicit Calabrese's business or that the Defendants ever had a physical presence in Rhode Island.

In his supporting Declaration (Dkt. No. 11), Calabrese further asserts that (1) his attorney frequently communicated with Trussell by telephone and in writing (Calabrese makes no assertions and provides no evidence as to who initiated such communications or what their content was or how many such contacts there were); and (2) Trussell sent the necessary documents to Calabrese's attorney in Rhode Island. At the same time, Calabrese acknowledges that (1) he wanted to buy new policies because Anglo-Dutch was getting out

9

of the business; (2) he hired an attorney to assist him in transfering his investment to Bermuda Life without having to pay taxes on the transfer; (3) his attorney contacted Trussell "to do what was necessary to get [Calabrese] into" the Bermuda Life Policies; (4) Calabrese executed related documents in Rhode Island; and (5) Calabrese's attorney forwarded the documents to Trussell. Pltf.'s Decl. at ¶ 13.

On their part, the Defendants point out that they do not maintain offices or operations in Rhode Island; that they do not hold property or bank accounts in this state, and that they have never conducted business in this state, nor have they directed any business activity or advertisement, or commenced any litigation here. None of those assertions are disputed by Calabrese. The Defendants confirm, as supported by Trussell's sworn declaration (Dkt. No. 15-3), that (1) Trussell was contacted by Calabrese's attorney; (2) Trussell had a number of communications with Calabrese's attorney regarding the process of re-investing Calabrese's funds in the Bermuda Life Policies; and (3) Trussell sent three letters to Argus, forwarding various documents executed by Calabrese in Rhode Island. Trussell Decl. ¶¶ 7, 8. All of those assertions are consistent with the facts alleged by Calabrese. Trussell further asserts that no negotiations took place between him and Calabrese's attorney regarding the terms of the Bermuda Life Policies, which were standard and non-negotiable, and that

10

Trussell and Calabreses's attorney had no discussion regarding Calabrese's investment strategy because "Calabrese's existing shares in the Rye Select Fund were simply retitled to Bermuda Life in the exchange." Id. at ¶ 9.

None of Trussell's assertions are controverted by Calabrese with any evidentiary support or even with more specific allegations that would provide a foundation for a finding of "purposeful availment" on the part of the Defendants. Although Calabrese points out that the Defendants sold two annuity policies to an individual they knew to be a Rhode Island resident, and he insists that his attorney "negotiated" with Trussell, the former is simply insufficient to provide grounds for a finding of "purposeful availment," and the latter is unsupported by any documentation, other factual evidence, or even by more specific assertions.

In sum, there is a marked absence of any "(properly documented) evidentiary proffers," see Hannon v. Beard, 524 F.3d at 280, by Calabrese that would demonstrate that the Defendants purposefully availed themselves of this forum by merely selling two annuity policies to a Rhode Island resident who had undisputedly reached out to them with the request to purchase those policies. Accordingly, the Court is of the opinion that Calabrese has failed to meet his burden to establish grounds for specific jurisdiction.

Calabrese's newly asserted request for jurisdictional discovery requires little discussion. In order to be permitted to

11

conduct such discovery, at the Court's discretion, the plaintiff has the burden to make out a "colorable claim" for the existence of personal jurisdiction. United States v. Swiss American Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001). Calabrese's unsupported allegations are insufficient to support a finding of specific jurisdiction; whereas the Defendants' assertions regarding their limited activities remain uncontroverted and Calabrese's additional assertions regarding negotiations between his attorney and Argus are unsubstantiated by any evidentiary support or even by more specific allegations. In the absence of any evidence or specific assertions of possible additional interactions between the parties that would qualify as "purposeful availment," this Court concludes that jurisdictional discovery is unlikely to be useful.

In sum, based on the Court's review of the R&R and the pleadings and submissions by the parties, the Court agrees with Magistrate Judge Almond's conclusion that this Court has no personal jurisdiction over the Defendants. Because that determination is dispositive, the Court need not consider the Defendants' assertion that Calabrese has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, the Court adopts the May 21, 2015 R&R and GRANTS the Defendants' motion to dismiss Calabrese's claim for lack of personal jurisdiction.

Because this Court is without jurisdiction to decide this case on the merits, the case is DISMISSED WITHOUT PREJUDICE.

SO ORDERED:

<u>/s/ Mary M. Lisi</u>

Mary M. Lisi
United States District Judge

June 29, 2015